FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT
TAMPA DIVISION

11 APR 29 PM 1:50

CLERK
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES FOR USE OF THE
MIDDLESEX CORPORATION,
as assignee of John Carlo, Inc.

      Plaintiff,

v.

      CASE NO.: 8:11-CV-947-T-33AEP

EPB ENTERPRISES, L.L.C., and
TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

      Defendants.

_____/

### COMPLAINT

United States, for use of The Middlesex Corporation ("Middlesex") as assignee of John

Carlo, Inc., by and through undersigned counsel, sues EPB Enterprises, L.L.C. ("EBP") and

Travelers Casualty and Surety Company of America ("Travelers"), and states as follows:

### JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to the 28 U.S.C. § 1331 and

provisions of the Miller Act, 40 U.S.C. §3133(b)(3)(B). The Court has pendent jurisdiction and

supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28

U.S.C. § 1367.

2.     The contract at issue was to be performed and executed in Polk County, Florida.

Venue therefore lies in the United States District Court for the Middle District of Florida

pursuant to 40 U.S.C. §3133(b)(3)(B) and 28 U.S.C. § 1391(b)(2).



**PARTIES**

3.      Middlesex is a Massachusetts corporation authorized to conduct business in the State of Florida.

4.      EPB is a Florida limited liability company authorized to conduct business in the State of Florida.

5.      Travelers is a surety authorized to conduct business in the State of Florida.

**GENERAL ALLEGATIONS**

6.      The United States Air Force (the "USAF") contracted with Denshaw, Inc. d/b/a Coleman Construction, Inc. ("Coleman") for construction of the Avon Park Air Force Base Phase II project (the "Project") in Polk County, Florida.

7.      On or about May 26, 2009, Coleman obtained a Miller Act payment bond from Travelers in the amount of $556,247.08. Exhibit A.  In the payment bond, Travelers agreed to be bound "jointly and severally with" Coleman to make payment to any subcontractor of Coleman who furnished labor, material or both in the prosecution of the work provided for in the contract between the USAF and Coleman, in the event that Coleman failed to make prompt payment to such persons.

8.      EPB entered into a subcontract with Coleman to perform a portion of the construction work for the Project.

9.      John Carlo, Inc. ("John Carlo") entered into subcontract with EBP to perform a portion of the construction work for the Project.  Exhibit B.

10.      John Carlo satisfactorily completed its work on the Project, with the last work being furnished in May 2010.

11.     The total value of the unpaid work furnished and invoiced by John Carlo on the Project is $327,999.70.  A copy of the invoice is attached as Exhibit C.

12.     John Carlo served a timely Notice to Owner / Notice to Contractor upon the USAF, Coleman, EPB and Travelers.  Exhibit D.

13.     John Carlo served a timely Notice of Nonpayment upon Coleman and Travelers. Exhibit E.

14.     John Carlo assigned all of its claims and causes of action against EPB and Travelers relating to or arising from its contract with EPB to perform a portion of the construction work for the Project to Middlesex. Exhibit F.

15.     All conditions precedent to bringing this action have been performed or have occurred.

**COUNT I**
**(Action on Payment Bond)**

16.     Middlesex realleges paragraphs 1 through 15.

17.     Pursuant to the payment bond, Travelers is obligated to pay John Carlo for the labor, materials and services it furnished to the Project.

18.     Middlesex has a direct relationship with EPB by virtue of the assignment from John Carlo.

19.     Travelers has breached its payment bond obligations by failing to pay John Carlo for the unpaid work furnished and invoiced by John Carlo on the Project.

20.     Middlesex has suffered substantial damages as a result of Travelers' failure to satisfy its obligations under the payment bond.

21.     Middlesex has retained the undersigned attorneys to represent it in this action and has agreed to pay a reasonable fee for their services.  Such attorneys' fees, costs and expenses are recoverable pursuant to statute and applicable law.

WHEREFORE, Middlesex demands judgment against Travelers Casualty and Surety Company of America for damages, interest, attorneys' fees, costs and any further relief this Court deems proper.

## COUNT II
### (Action for Breach of Contract)

22.     Middlesex realleges paragraphs 1 through 15.

23.     EPB was obligated under the terms of its agreement with John Carlo to pay for all services and materials furnished by John Carlo.

24.     John Carlo duly provided services and materials pursuant to the agreement; however, EPB has failed and refused to remit the full balance due to John Carlo.  By reason of the foregoing, EPB has breached the terms of the agreement.

25.     As a result of EPB's breach and John Carlo's assignment of its claims and causes of action to Middlesex, Middlesex has suffered damages.

26.     All conditions precedent to the relief sought herein have occurred or have been performed, waived or excused.

WHEREFORE, Middlesex demands judgment against EPB Enterprises, L.L.C. for damages, interest, costs and any further relief this Court deems proper.

## COUNT III
### (Action for Account Stated)

27.     Middlesex realleges paragraphs 1 through 15.

28.     Prior to institution of this action, John Carlo and EPB engaged in business transactions between them and agreed that a resulting balance was due and owing to John Carlo. John Carlo periodically submitted invoices reflecting the amounts due on EPB's account, and EPD did not dispute or object to the amounts reflected in the invoices.

29.     By reason of the foregoing and the assignment of John Carlo's claims to Middlesex, EPB owes Middlesex those sums assigned to Middlesex, plus interest.

WHEREFORE, Middlesex demands judgment against EPB Enterprises, L.L.C. for damages, interest, costs and any further relief this Court deems proper.

## COUNT IV
### (Action for Open Account)

30.     Middlesex realleges paragraphs 1 through 15.

31.     At all times prior to the institution of this action, EPB maintained an account with John Carlo reflecting services and materials progressively furnished by John Carlo pursuant to the agreement between John Carlo and EPB.

32.     EPB's account reflects an amount due to John Carlo in the principal sum of $327,999.70, plus interest accruing.

33.     By virtue of John Carlo's assignment of its claims against EPB to Middlesex, EPB owes Middlesex the amount, Middlesex still has yet to be paid.

WHEREFORE, The Middlesex Corporation demands judgment against EPB Enterprises, L.L.C. for damages, interest, costs, and any further relief this Court deems proper.

Dated this 29th day of April 2011.

Christopher T. McRae
Florida Bar No. 865982
David J. Metcalf
Florida Bar No. 871427
McRae & Metcalf, P.A.
2612 Centennial Place
Tallahassee, Florida 32308
Telephone (850) 386-8000
Facsimile (850) 386-8342

Attorneys for The Middlesex Corporation

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) 27 May 2009 | OMB NO.: 9000-0045 Bond # 105248403 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

**PRINCIPAL** (Legal name and business address)

Coleman Construction
1073 W. 48th Street
Los Angeles, CA 90082

**TYPE OF ORGANIZATION** ("X" one)
☐ INDIVIDUAL          ☐ PARTNERSHIP
☐ JOINT VENTURE    ☒ CORPORATION

**STATE OF INCORPORATION**
California

**SURETY(IES)** (Name(s) and business address(es))

Travelers Casualty and Surety Company of America
One Tower Square, 4PB
Hartford, CT 06183

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| | $986. | *247. | .00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 28 May 2009 | FA4630-05-G-0004 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | | PRINCIPAL | | |
|---|---|---|---|---|
| Coleman Construction | | | | |
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | |
| NAME(S) & TITLE(S) (Typed) | 1. Sharon D. Coleman President | 2. | 3. | Corporate Seal |

| | INDIVIDUAL SURETY(IES) | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

| | NAME & ADDRESS | | STATE OF INC | LIABILITY LIMIT ($) |
|---|---|---|---|---|
| SURETY A | Travelers Casualty & Surety Company of America One Tower Square, 4PB, Hartford, CT 06183 | CORPORATE SURETY(IES) | Connecticut | $120,096,000 |
| | SIGNATURE(S) | 1. | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Stanley J. Matlonga Attorney-In-Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

EXHIBIT
A

## CORPORATE SURETY(IES) (Continued)

| SURETY B | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | STATE OF INC. | LIABILITY LIMIT (S) | SIGNATURE(S) 1. | Corporate Seal |
| | | | 2. | |
| | | | NAME(S) & TITLE(S) (Typed) 1. | |
| | | | 2. | |

| SURETY C | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | STATE OF INC. | LIABILITY LIMIT (S) | SIGNATURE(S) 1. | Corporate Seal |
| | | | 2. | |
| | | | NAME(S) & TITLE(S) (Typed) 1. | |
| | | | 2. | |

| SURETY D | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | STATE OF INC. | LIABILITY LIMIT (S) | SIGNATURE(S) 1. | Corporate Seal |
| | | | 2. | |
| | | | NAME(S) & TITLE(S) (Typed) 1. | |
| | | | 2. | |

| SURETY E | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | STATE OF INC. | LIABILITY LIMIT (S) | SIGNATURE(S) 1. | Corporate Seal |
| | | | 2. | |
| | | | NAME(S) & TITLE(S) (Typed) 1. | |
| | | | 2. | |

| SURETY F | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | STATE OF INC. | LIABILITY LIMIT (S) | SIGNATURE(S) 1. | Corporate Seal |
| | | | 2. | |
| | | | NAME(S) & TITLE(S) (Typed) 1. | |
| | | | 2. | |

| SURETY G | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | STATE OF INC. | LIABILITY LIMIT (S) | SIGNATURE(S) 1. | Corporate Seal |
| | | | 2. | |
| | | | NAME(S) & TITLE(S) (Typed) 1. | |
| | | | 2. | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270d). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES) ."

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25A (REV. 10-98) BACK

4534

RECEIVED

NOV 04 2009

JCI FL NE

## SUBCONTRACT

PROJECT : Avon Park Air Base CRATR / JCTD

CONTRACTOR:                               EPB Enterprises, LLC
                                          101 Deer Trail East
                                          Sebring, FL   33876

SUBCONTRACTOR:                            John Carlo, Inc.
                                          14155 N. Main Street
                                          Jacksonville, FL 32218

OWNER:                                    United States Air Force

SUBCONTRACT entered into this 2ɜ day of Nov , 2009, by and between EPB Enterprises, LLC., hereinafter called "Contractor," and JOHN CARLO, INC., hereinafter called "Subcontractor."

WHEREAS, Contractor has entered into a certain contract, dated September 18, 2009 with Coleman Construction, Inc. hereinafter called "Owner," to execute construction work for Owner on the above referenced Project. This Subcontract is for the performance by Subcontractor of all labor, materials and equipment to perform Subcontractor's work as indicated in Exhibit I (the "Work"), per the Owner's Plans, Specifications and the attached Additional Terms of Subcontract.

In the event that EPB Enterprises, LLC is a Subcontractor to a Prime Contractor/General Contractor, for the purpose of this Subcontract and the Additional Terms of Subcontract, the term "Owner" shall mean the Prime Contractor/General Contractor and where applicable also the true owner of the project.

The parties hereto mutually agree as follows:

In consideration hereof, the Contractor agrees to pay the Subcontractor as follows:

EXHIBIT

B

## EXHIBIT I
## THE WORK

| Area 1 Phase 2 | | | | |
|---|---|---|---|---|
| Mobilization | 1 | LS | $21,500.00 | $21,500.00 |
| Erosion Control | 1 | LS | $800.00 | $800.00 |
| Demo Existing 7" PCC -- by others | 5,000 | SY | $0.00 | $0.00 |
| Demo Existing Sand 2" -- by others | 5,000 | GY | $0.00 | $0.00 |
| Demo Existing AC Layer, 1.5" -- by others | 5,000 | SY | $0.00 | $0.00 |
| Place Aggregate Base, 4" -- mat'l By others | 5,000 | SY | $6.70 | $33,500.00 |
| Place 12" PCC | 5,000 | SY | $57.75 | $288,750.00 |
| Rigid Pavement / Flex Pavement Joint | 0 | LF | $175.00 | $0.00 |
| Special Joint End of Runway | 150 | LF | $46.00 | $6,900.00 |
| Testing | 5,000 | SY | $1.50 | $7,500.00 |
| Pavement Markings -- Airfield | 1 | LS | $1,125.00 | $1,125.00 |
| Area 1 Subtotal | | | | $360,075.00 |

| Area 2 Phase 2 | | | | |
|---|---|---|---|---|
| Replace 44 ea Slabs -- sawcut, removal, haul and crushing of slabs by others | 427.22 | CY | $215.00 | $91,852.30 |
| Repair Partial depth Spalls | 50 | LF | $300.00 | $15,000.00 |
| Partial Slab Replacement | 7 | EA | $397.00 | $2,779.00 |
| Testing | 1042 | SY | $1.50 | $1,563.00 |
| Area 2 Phase 2 Subtotal | | | | $111,194.30 |

| Area 3 Phase 2 | | | | |
|---|---|---|---|---|
| Erosion Control | 1 | LS | $450.00 | $450.00 |
| Demo Existing Asphalt, 5" | 4,143 | SY | $5.00 | $20,715.00 |
| Demo Existing Base (Craters) 10 ea -- by others | 0 | SY | $0.00 | $0.00 |
| Repair Base for Craters -- 10 ea | 0 | SY | $175.00 | $0.00 |
| Place Asphalt, 5" | 4,143 | SY | $32.50 | $134,647.50 |
| Pavement Marking -- Airfield | 1 | LS | $1,250.00 | $1,250.00 |
| Testing | 10 | EA | $120.00 | $1,200.00 |
| Area 3 Subtotal | | | | $158,262.50 |

| Area 4 Phase 2 | | | | |
|---|---|---|---|---|
| Erosion Control | 1 | LS | $1,100.00 | $1,100.00 |
| Demo Existing Asphalt, 5" | 2,167 | SY | $5.00 | $10,835.00 |
| Demo Existing Base (Craters) 5 ea -- by others | 33 | SY | $0.00 | $0.00 |
| Repair Base for Craters -- by others | 0 | SY | $200.00 | $0.00 |
| Place 5" Asphalt | 2,167 | SY | $32.50 | $70,427.50 |
| Testing | 10 | EA | $120.00 | $1,200.00 |
| Pavement Marking -- Airfield | 1 | LS | $1,250.00 | $1,250.00 |
| Area 4 Subtotal | | | | $84,812.50 |

| Total | | | | $714,344.30 |

The attached Additional Terms of Subcontract are made a part of this Subcontract:

1. Scope of work is based on Statement of Work titled Critical Runway Assessment and Repair (CRATR) Joint Concept Technology Demonstration (JCTD) Avon Park, Florida. The statement of work contains eight descriptive items of work.
2. No bonds or permits are included.
3. One mobilization to the site is included.
4. No electric work of any kind nor utility protection or relocation is included.
5. All demolition, associated saw-cutting, hauling and stockpiling of material is by others.
6. Supply of approved base material dumped in place is by others, spreading and compaction of base material by JCI.
7. Subgrade to be received by JCI +/- .10'.
8. No removal of unsuitable materials is included.
9. Concrete paving includes dowels at longitudinal joints, only first three transverse joints from runway end, and tie-bars only in joints adjacent to free edges, and saw and seal new PCC.
10. Craters assumed to be 10'x10'x2' in areas 3 & 4.

Witness:                                          FFB Enterprises, LLC.

_____

                                                  Date: 4/3/09

Witness:                                          JOHN CARLO, INC.

_____

                                                  Date: 10-84-09

## ADDITIONAL TERMS OF SUBCONTRACT

SUBCONTRACTOR: John Carlo, Inc.

The following terms are hereby added to and made part of the attached Subcontract between EPB Enterprises, LLC. (Contractor) and John Carlo, Inc. (Subcontractor) for performance of work in accordance with a Prime Contract between Contractor and the Project's Owner.

### SECTION 1.

The Subcontractor agrees to complete all items of work specified and listed in this Subcontract at the unit prices set forth for such items of work as stated in Exhibit I (the "Work"), subject to additions and deductions for changes agreed upon or determined, as hereinafter provided. The Work shall include all items that can reasonably be inferred as included herein. Partial payments will be made to the Subcontractor at the unit prices as set forth in Exhibit I for work and materials incorporated in the construction and/or materials delivered to the site of the work by the Subcontractor, as estimated by the Architect, Engineer, Contractor or Owner, less the aggregate of previous payments. There shall be retained from each payment due a percentage equal to the percentage retained by the Owner in compensating the Contractor for the Work as performed under the Subcontract. In addition, no payment as set forth above shall become due until seven (7) days after the Contractor has received payment for such Work as performed from the Owner, or no later than 45 from the date of invoice, whichever is sooner. Contractor's receipt of payment for Subcontractor's Work is not an express condition precedent to payment to Subcontractor. Upon complete performance of the Subcontract and final approval and acceptance of the Work and materials by the Owner, and Subcontractor supplying the Contractor with Sworn Statement(s), lien waiver(s), guarantee(s), and other reasonably requested documents, the Contractor will make final payment due the Subcontractor within seven (7) days after full payment for such Work and materials has been received by the Contractor from the Owner, or within 45 days of invoice, whichever is sooner. It is expressly understood that no partial payment to the Subcontractor shall operate as approval or acceptance of any work done or materials furnished under the Subcontract. In addition, the Subcontractor agrees to reimburse the Contractor in the event that there is an overpayment on the basis of the work preformed or materials furnished under this Subcontract.

Quantities are approximate and are to be paid as the minimum. Owner's field measurements of final quantities and the unit prices contained herein shall govern the final sum of the Subcontract, unless pay item or contract is Lump Sum.

### SECTION 2.

The rights of the Contractor to change, add to and delete from the Subcontract Work, the Subcontractor's duty to perform such changed or extra work, and the modification, if any, in the contract price, as a result thereof, shall be governed by the applicable provisions of the Contract Documents where reasonably deemed applicable by the Contractor. If the provisions of the Contract Documents require Contractor to file within a specified time period notices, claims or other documents with the Owner in order to receive compensation for extra or changed work,

09.07.05
JCI.R.715

the Subcontractor shall supply such notices, claims or documents, in the form required to the Contractor so as to allow Contractor to timely file them.

All claims of the Subcontractor arising out of the acts or omissions of the Owner or any person or entity other than Contractor shall be presented to the Owner by the Contractor on behalf of the Subcontractor and finally resolved through the claims procedure (arbitration, litigation or otherwise) applicable between the Contractor and Owner. If the provisions of the Prime Contract require Contractor to file within specified time periods, notices, claims or other documents with the Owner in order to receive compensation for claims, the Subcontractor shall supply such notices, claims or other documents in the form required of the Contractor so as to allow Contractor to timely file them with the Owner. Subcontractor shall pay all costs and expenses, including attorneys' fees, related to the presentation and prosecution of such claims. Subcontractor's sole remedy shall be to receive the amount received by the Contractor from the Owner with respect to such claims.

SECTION 3:

In the event that the Subcontractor's performance of the Subcontract is accelerated, delayed or interfered with by the acts of the Contractor or other subcontractors, the Subcontractor is entitled to an extension of time for the performance of the Work equal to the period of acceleration or delay in addition to the associated costs of such delay.

In the event the Subcontractor's performance is accelerated, delayed or interfered with by the acts of the Owner or any entity acting on behalf of Owner, the Subcontractor shall be entitled to an extension of time for the performance of the Subcontract. In addition, the Subcontractor shall be entitled to recover such costs and/or damages as the Contractor shall actually recover from the Owner for acceleration, delay or interference.

SECTION 4:

The Subcontractor specifically agrees that it is an independent employing unit subject as an employer to all applicable Unemployment Compensation Statutes so as to relieve the Contractor of any responsibility for records, making reports and payments of Unemployment Compensation Taxes, fringe benefits or contributions, and the Subcontractor shall indemnify and hold the Contractor harmless and reimburse it for any expense or liability incurred under any obligations in connection with employees of the Subcontractor, including reimbursing Contractor for benefits paid to those who were Subcontractor's employees, where such benefit payments or amounts are charged to the Contractor.

The Subcontractor further agrees as regards: (a) the production, purchase and sale, furnishing and delivering, pricing, and use or consumption of materials, supplies, and equipment; (b) the hire or tenure of employees and/or (c) the keeping of records, making of reports, and the payment, collection, and/or deduction of Federal, State and Municipal taxes, contributions and fringe benefits that the Subcontractor will keep and have available all necessary records and make all payments, reports, collections and deductions and otherwise do any and all things so as to fully comply with all Federal, State and Municipal laws, ordinances, regulations, requirements of the Contract Documents or Union Agreements to which it is signatory, in regard to any and all said matters insofar as they affect or involve the Work, all so as to fully relieve the Contractor from and protect it against any and all responsibility or liability therefore or in regard thereto.

2.

09.07.06
JOI.R.7-6

**SECTION 5.**
The words "Architect, Engineer and/or Designer" as used herein refer to the person appointed by the Owner to supervise the work of the Contractor on behalf of the Owner.

**SECTION 6.**
Subcontractor shall comply with all laws, ordinances, regulations and directives of any local, state or federal governmental unit now or at any time hereafter applicable to the Work, including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, on-the-job training, safety, MIOSHA (or state equivalent) requirements and orders, prevailing wage rates and fringe benefits under Davis-Bacon Act and all other laws, ordinances and regulations with which Contractor must comply. Subcontractor shall be liable to Contractor and the Owner, or its representative entities, for all loss, cost and expenses attributable to any acts of commission or omission by Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures.

**SECTION 7.**
Employment of labor by Subcontractor shall be effected under conditions which are satisfactory to Contractor. Subcontractor shall remove or cause to have removed from the project any employee or employees who are reasonably considered unsatisfactory by the Contractor.

**SECTION 8.**
If required by the Contract Documents, the Subcontractor shall submit weekly and/or "Certified" payrolls. These payrolls shall be submitted directly to the Contractor.

**SECTION 9.**
The markup for Extra Work will be in accordance with the Contract Documents or as directed by Contractor.

**SECTION 10.**
If the Subcontractor deems that the services or work to which its Work is to be applied or affixed are unsatisfactory or unsuitable, written notification of said conditions shall be given to the Contractor within ten (10) days after the Subcontractor knew or should have known of such unsatisfactory or unsuitable conditions. The Subcontractor will have no claim for extra compensation nor will any consideration be given to non-responsibility for the Subcontractor's Work due to or caused by such unsatisfactory or unsuitable conditions if the provisions of this paragraph are not strictly complied with.

**SECTION 11.**
In the performance of the Subcontract, the Subcontractor shall comply with all applicable Federal, State, Municipal, and local laws and regulations governing safety, health, and sanitation. In addition, Subcontractor shall comply with the construction safety orders/directives issued by either the Owner, a Government Agency, or the Contractor.

**SECTION 12.**
This Subcontract contains the complete agreement between the parties with respect to the Work and nullifies and supersedes all prior negotiations, proposals, stipulations and

3

09.07.05
JCI.R.7-5

agreements whether written or oral. There are no prior or contemporaneous agreements in any way dealing with the Work not referenced herein. No agent, representative, employee, officer, or director of Contractor has or had authority to make any statement, representation, promise, or agreement in contravention of or modifying this Subcontract. Subcontractor agrees that it was not induced to enter into this Subcontract by any such statement, representation, promise or agreement and that Contractor is not bound or in any other way liable because of any such statement, representation, promise or agreement.

SECTION 13.
The Subcontractor shall clean up and remove from site as directed by the Contractor all rubbish and debris resulting from his Work.

SECTION 14.
Subcontractor shall furnish promptly all samples, lists, drawings, schedules, etc. required in connection with the Work and which may be called for under any provision of the Contract Documents. All such items shall be furnished directly to the Contractor, transportation costs to be paid by the Subcontractor.

SECTION 15.
This Subcontract is effective the date set forth below even though it may have been signed by one or both parties on dates either before or after the effective date.

SECTION 16.
The partial or complete invalidity of any one or more provisions of this subcontract shall not affect the validity or continuing force and effect of any other provision.

The failure of Contractor to enforce at any time any of the provisions of this Subcontract or to require at any time full and complete performance by Subcontractor of any of the provisions hereof, shall in no way be construed as a waiver nor in any way affect the right of Contractor to enforce each and every such provision.

SECTION 17.
Modification of this Agreement shall only be in writing and executed by both parties.

SECTION 18.
This Subcontract shall be governed by, construed under and interpreted and enforced under the laws of the State where the Project is located. Except as otherwise provided in this Subcontract, all legal proceedings arising out of this Subcontract shall be filed and prosecuted in Macomb County, Michigan, and each party to this Subcontract consents to jurisdiction and venue in that forum.

09.07.05
JCIIR.7-5

WITNESS the due execution hereof, this 2nd day of Nov. , 2009.

WITNESSES:

EPB Enterprises, LLC

By: _____

EDUARDO P. BONIS

Its: President

CONTRACTOR

Jenny Harvey

AND: John Carlo, Inc.

By: _____

Curtis A. Johnson

Its: V.P.

SUBCONTRACTOR

//Additional Terms of Subcontract FLORIDA.doc

5

09.07.05
JCI.R.7-5

*CUST* 9150

4534-1
*Revised*

# INVOICE

...nh Carlo, Inc.
9671 Tradeport Drive
Orlando, FL 32827
Phone 407-816-3503  Fax 407-816-3505

INVOICE #001
DATE: JANUARY 25, 2010

TO:
EPB Enterprises, LLC
101 Deer Trail East
Sebring, FL 33876

SHIP TO:

**COMMENTS OR SPECIAL INSTRUCTIONS:**

Avon Park Air Base -- Area 2 Phase 2

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 1 LS | Mobilization | $21,500.00 | $21,500.00 |
| 1 LS | Erosion Control | $0.00 | $0.00 |
| 6,310 SY | Demo Existing Asphalt 5" | $5.00 | $31,550.00 |
| 6,310 SY | Place 5" Asphalt | $32.50 | $205,075.00 |
| 5,000 SY | Place Aggregate Base | $6.70 | $33,500.00 |
| 5,000 SY | 12" PCC | $57.75 | $288,750.00 |
| 150 LF | Special Joint, End of Runway **(NOT PROVIDED)** | $46.00 | $6,900.00 |
| 1 LS | Testing -- Area 1, 2, 3, 4 | $11,463.00 | $11,463.00 |
| 1 LS | Pavement Markings -- Area 1, 2, 3, 4 | $3,625.00 | $3,625.00 |
| 427.22 CY | Replace Slabs | $215.00 | 91,852.30 |
| 50 LF | Partial Depth Repairs | $300.00 | $15,000.00 |
| 7 EA | Partial Slab Replacement | $397.00 | $2,779.00 |
| | | SUBTOTAL | $711,994.00 |
| | | SALES TAX | N/A |
| | | SHIPPING & HANDLING | N/A |
| | | TOTAL DUE | $711,994.00 |

Joint Check amount for John Carlo, Inc and The Middlesex Corporation is $247,270.00
Balance Payment amount to John Carlo single is $$464,724.00
Make all checks payable to John Carlo, Inc.
If you have any questions concerning this invoice, contact Scott Baldwin or Geri Tockstein, (407)816-3503

Thank you for your business!

$711,994 = JCI contract amount minus Sediment Control ($2350)
Actual amount owed is $711,994 minus $6,900 = $705,094

1-25-10 Payment
$377,094.30
Balance of contract
= $327,999.7


EXHIBIT
C

# INVOICE

**John Carlo, Inc.**
9671 Tradeport Drive
Orlando, FL 32827
Phone 407-816-3503  Fax 407-816-3505

INVOICE #001
DATE: JANUARY 4, 2010

**TO:**
EPB Enterprises, LLC
101 Deer Trail East
Sebring, FL 33876

**SHIP TO:**

**COMMENTS OR SPECIAL INSTRUCTIONS:**

Avon Park Air Base -- Area 2 Phase 2

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 1 LS | Mobilization | $21,500.00 | $21,500.00 |
| 1 LS | Erosion Control | $0.00 | $0.00 |
| 6,310 SY | Demo-Existing Asphalt 5" | $5.00 | $31,550.00 |
| 6,310 SY | Place 5" Asphalt | $32.50 | $205,075.00 |
| 5,000 SY | Place Aggregate Base | $6.70 | $33,500.00 |
| 5,000 SY | 12" PCC | $57.75 | $288,750.00 |
| 150 LF | Special Joint, End of Runway | $46.00 | $6,900.00 |
| 1 LS | Testing -- Area 1, 2, 3, 4 | $11,463.00 | $11,463.00 |
| 1 LS | Pavement Markings -- Area 1, 2, 3, 4 | $3,625.00 | $3,625.00 |
| 427.22 CY | Replace Slabs | $215.00 | 91,852.30 |
| 50 LF | Partial Depth Repairs | $300.00 | $15,000.00 |
| 7 EA | Partial Slab Replacement | $397.00 | $2,779.00 |
| | | SUBTOTAL | $711,994.00 |
| | | SALES TAX | N/A |
| | | SHIPPING & HANDLING | N/A |
| | | TOTAL DUE | $711,994.00 |

Joint Check amount for John Carlo, Inc and The Middlesex Corporation is $247,270.00
Balance Payment amount to John Carlo single is $$464,724.00
Make all checks payable to John Carlo, Inc.
If you have any questions concerning this invoice, contact Scott Baldwin or Geri Tockstein, (407)816-3503

**Thank you for your business!**



## Contractors Notice to Owner Co., LLC.

814 S.E. Cavern Ave. Port Saint Lucie, FL. 34983
Phone: 772-408-0718  Fax: 772-224-8136

WARNING! FLORIDA'S CONSTRUCTION LIEN LAW ALLOWS SOME UNPAID CONTRACTORS, SUBCONTRACTORS, AND MATERIAL SUPPLIERS TO FILE LIENS AGAINST YOUR PROPERTY EVEN IF YOU HAVE MADE PAYMENT IN FULL. UNDER FLORIDA LAW, YOUR FAILURE TO MAKE SURE THAT WE ARE PAID MAY RESULT IN A LIEN AGAINST YOUR PROPERTY AND YOUR PAYING TWICE. TO AVOID A LIEN AND PAYING TWICE, YOU MUST OBTAIN A WRITTEN RELEASE FROM US (John Carlo, Inc. @ 586-226-7235) EVERY TIME YOU PAY YOUR CONTRACTOR.

# NOTICE TO OWNER / NOTICE TO CONTRACTOR

TO;  Moody Air Force Base Attn; Construction Quadrant 5124 Austin Ellipse Moody, GA. 31699

The undersigned hereby informs you that he has furnished or is furnishing service or materials as follows:
Demo, Site Work, Pavement Markings, Materials, Labor & Related Services.

For improvements of the real property in Florida identified as:  Avon Park, Critical Runway Improvements ("2nd subcontract PH-II"), Highlands County, Prj # 9000-0045  ***Bond # 105246403

UNDER AN ORDER GIVEN BY:  EPB Enterprises, LLC.

Florida law prescribes the serving of this Notice and restricts your right to make payments under your contract in accordance with Section 713.06 Florida Statutes. Pursuant to Florida Statute 713.16(1) please furnish a copy of your direct contract with the contractor. Responsibility for copy costs is acknowledged. Request for Sworn Statement of Account must be addressed to: John Carlo, Inc.

### IMPORTANT INFORMATION FOR YOUR PROTECTION
Under Florida's laws, those who work on your property or provide materials and are not paid have a right to enforce their claim for payment against your property. This claim is known as a construction lien. If your contractor fails to pay subcontractors or material suppliers or neglects to make other legally required payments, the people who are owed money may look to your property for payment, EVEN IF YOU HAVE PAID YOUR CONTRACTOR IN FULL.

### PROTECT YOURSELF
RECOGNIZE that this Notice to Owner may result in a lien against your property unless all those supplying a Notice to Owner have been paid. LEARN more about the Construction Lien Law, Chapter 713, Part I, Florida Statutes, and the meaning of this notice by contacting an attorney or the Florida Department of Business and Professional Regulation. If a Payment Bond or a Public Works Bond exists for this project, this notice shall serve as the preliminary notice of intent to make claim against any such bond(s). Request for a copy of the bond(s) is hereby made, with acknowledgement of responsibility for copy cost. Failure to furnish the requested copy may render you liable for damages, as described in Florida Statutes 713.23, 713.245 and 255.05

Owner;
Reg Mail
Moody Air Force Base  Attn; Construction Quadrant
5124 Austin Ellipse
Moody, GA. 31699

Contractor;
FedEx # 862683591608
Coleman Construction, Inc.
199 Barber Rd Ste A
Ray City, GA. 31645

Copies to;

FedEx # 862683591619
Travelers Casualty & Surety
One Tower Square
Hartford, CT. 06183

EPB Enterprises, LLC.
101 Deer Tr. E
Sebring, FL. 33879

Firm;
John Carlo, Inc.
45000 River Ridge Dr. Ste 200
Clinton Township, MI. 48038

By: _____
Carl Hauthaway, Agent

Date: 12-22-09

Ref #: 18235-09 / 4534

Job Name:  Avon Pk Runway ("PH-II")



EXHIBIT
D

Case 8:11-cv-00683-SCB-TGW   Document 1-5    Filed 03/31/11   Page 1 of 1 PageID 20

#4534

# Notice of Non Payment

7-15-10

Principle;
Cert # 70092250000369099513
Coleman Construction, Inc.
199 Barber Rd Ste A
Ray City, GA. 31645

Surety;
Cert # 70092250000369099520
Travelers Casualty & Surety
One Tower Square
Tampa, FL. 33634

Referenced Job; Avon Park Air Base PH-II

The undersigned has furnished or is furnishing service or materials as follows:
Concrete Airfield Paving, Labor and Related Services.

for the improvement of the real property identified as; Avon Park, Critical Runway Improvements, Highlands County, Prj # 9000-0045  ***Bond # 105246403

The Amount now due and unpaid is $ 327,999.70

Lienor/Claimant;

John Carlo, Inc.
45000 River Ridge Dr. Ste 200
Clinton Township, MI. 48038

Carl Hauthaway, Agent

Ref. # 18235N-10- / 4534



## ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION

For value received, John Carlo, Inc. ("**John Carlo**") hereby sells, assigns and transfers to The Middlesex Corporation("**Middlesex**"), any and all claims and causes for action for damages that John Carlo has or may in the future have against EPB Enterprises, LLC ("**EPB**") and Travelers Casualty & Surety Co. of America ("**Travelers**") relating to or arising from that certain contract between John Carlo and EPB dated on or about November 2, 2009, relating to the "Avon Park Air Base CRATR/JCTD" in Avon Park, Highlands County, Florida, including but not limited to, any and all claims and causes of action against the bond issued by Travelers.

Recovery from the claims and causes of action for damages sold, assigned or transferred shall not exceed the outstanding balance owed to Middlesex by John Carlo as shown on Exhibit "A" attached hereto. Any amounts awarded by the Court for interest shall be shared by Carlo and Middlesex on a pro-rata basis. Any amounts awarded by the Courts for attorneys' fees or court costs shall be paid to Middlesex. Any sum recovered in excess of the amount owed to Middlesex shall be paid to John Carlo or any other party as directed by John Carlo.

Upon payment of 80% or more of the balances owed to Middlesex as described in Exhibit "A" from any source, Middlesex shall release John Carlo for all claims relative to this project.

JOHN CARLO, INC.

By: _____ 4/29/11
        Authorized Representative



**EXHIBIT**
**F**

*Exhibit "A"*

04  06/07/10  08:45:19

*** C L I E N T   H I S T O R Y ***
The Middlesex Corporation - Paving Division

Sales During Period    01/01/00 thru 06/07/10

| Effective Date | Invoice | Invoice Date | Contract | Job | Pha | Activity | Amount | Discount | Retainage | Deposits | Pop Date | $Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **** 13522 JOHN CARLO. INC | | | | | 9471 IRADENCAI DRIVE | | | | | ORLANDO. FL 32827 | |
| 01/02/10 34137HL | 12/23/09 - | ' 45033 | 1 44 | | 225,865.00 | 0 00 | 22,586.50 | Unpaid | | |
| 01/02/10 34138HL | 12/23/09 - | 45021 | 1 44N | | 28,395 00 | 0 00 | 2 839 50 | Unpaid | | |
| | | | Job Total: | | 254,260.00 | 0.00 | 25,426.00 | | | 0 00 |
| | | | Invoice Total. | | 254 260.00 | 0 00 | 25,426 00 | | | 0.00 |
| | | | Client Total: | | 254.260.00 | 0.00 | 25,426 00 | | | 0.00 |